**FILED**
Samuel L. Kay, Clerk
**United States Bankruptcy Court**
**Augusta, Georgia**
**By pgraves at 10:03 am, Jan 19, 2011**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Waycross Division

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 CASE |
| PHILIP A. Weigl and | ) | NUMBER <u>10-60341</u> |
| MARSHA L. Weigl | ) | |
| | ) | |
|     Debtors | ) | |

| | |
|---|---|
| | ) |
| | ) |
| O.BYRON MEREDITH III | ) |
| | ) |
|     Chapter 13 Trustee/ | ) |
|     Objector | ) |
| | ) |
| vs. | ) |
| | ) |
| PHILIP A. WEIGL and | ) |
| MARSHA L. WEIGL | ) |
| | ) |
|     Debtors/Respondents | ) |

## MEMORANDUM OPINION AND ORDER SUSTAINING CHAPTER 13 TRUSTEE'S OBJECTION TO CONFIRMATION

This chapter 13 case filed on April 8, 2010 comes before me for confirmation with objection by the Chapter 13 Trustee. The Trustee contended that the plan proposed by the Debtors, Philip and Marsha Weigl, did not satisfy the "best interests of creditors" test, a requirement for confirmation under 11 U.S.C. § 1325(a)(4).[1] The basis of the Trustee's contention is that the

---

[1] Specifically, the statute requires that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each

plan does not propose to pay the value of real property that Philip Weigl transferred without consideration within one year of the petition date.[2] Under a liquidation analysis, a trustee could avoid such a transfer under 11 U.S.C. §§ 544 and 548 and any recovery under 11 U.S.C. § 550 would increase the distribution to creditors. Accordingly, the Trustee objected because the failure of the Debtors' plan to account for the recoverable value of the alleged fraudulent transfer violates the best interests of creditors test. Based upon evidence presented at hearing and the record before me, I find that the Trustee's analysis is correct. The objection is therefore sustained and confirmation is denied.

### BACKGROUND

On April 2, 2008, Frank Weigl, Philip Weigl's father, conveyed to his wife Elsie Weigl a fee simple interest in real property located at 122 Reba Drive, Swainsboro, Georgia ("Reba Drive") reserving a life estate in the property. Frank Weigl then died on April 22, 2008, vesting absolute ownership in Elsie Weigl. On April 27, 2009, upon advice of counsel, Elsie Weigl executed a warranty deed transferring an absolute fee simple

---

allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]" 11 U.S.C. § 1325(a)(4).
[2] The summary of schedules filed with the petition listed total assets of $183,580.92 and total liabilities of $266,788.36, including $92,724.53 in general unsecured claims. (Summ. of Sch. 1, ECF No. 5.) The Debtors' plan proposed to pay $600.00 per month for a minimum of 36 months and a dividend of 0% or $500.00 to unsecured creditors. (Plan 1, ECF No. 12.)

AO 72A

(Rev. 8/82)

interest in this property to her sons, Philip and M. Scott Weigl. The testimony at hearing was that the reason for the transfer was so the sons could manage affairs on her behalf should she develop a medical problem and become incapacitated in the future. Unlike the deed executed by her husband from which she, in time, obtained absolute title to the property, Elsie Weigl's deed did not reserve a life estate in her favor but rather transferred title to her two sons outright and absolutely. Nevertheless, Elsie Weigl has occupied and maintained the residence and paid all bills associated with the residence since her husband died.

On February 4, 2010, Philip Weigl executed a quitclaim deed transferring his interest in Reba Drive to his brother, M. Scott Weigl, reciting consideration of one dollar. This transfer of interest occurred within two years of Debtors' filing of their petition and therefore falls within the look back period for fraudulent transfers set forth in 11 U.S.C. § 548. At hearing, Debtors' stipulated that Philip Weigl was insolvent at the time of the transfer. (Hr'g Tr. 10, ECF No. 48.)

The Emmanuel County Board of Assessors currently values Reba Drive at $55,018. The Trustee therefore suggests that Philip Weigl's interest in Reba Drive prior to his transfer to M. Scott Weigl was one half that value, less ten percent as estimated costs of sale, or approximately $24,758. (Trustee's Br., Oct. 21, 2010, ECF No. 45 at 3.) The Trustee thus contends that the

3

transfer to M. Scott Weigl for less than reasonably equivalent value is avoidable as a fraudulent transfer.

The Debtors respond that, under Georgia law, Philip Weigl did not receive less than reasonably equivalent value for the transfer to M. Scott Weigl, because Philip did not transfer an absolute fee simple ownership interest in Reba Drive but rather bare legal title as a trustee of a resulting trust for the benefit of Elsie Weigl. The Debtors assert that this resulting trust arose out of an oral agreement between Elsie Weigl and her sons shortly after Elsie Weigl executed the warranty deed through which the sons would hold legal title to the property for the benefit of their mother who would retain absolute control over it. This agreement was never reduced to writing.

## REQUIREMENTS OF CONFIRMATION

The Debtors bear the ultimate burden of proof to show by a preponderance of the evidence that all confirmation requirements have been met. Gen. Motors Acceptance Corp. v. Johnson (In re Johnson), 145 B.R. 108, 111 (Bankr. S.D. Ga. 1994). Here, the Trustee objected, presenting evidence that the Debtors' plan does not satisfy a requirement, the "best interests of creditors test," embodied in 11 U.S.C. 1325(a)(4). To overcome the Trustee's objection, the Debtors' plan must distribute property on account of each allowed unsecured claim, the value of which is

4

not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7.

A trustee may avoid fraudulent transfers. 11 U.S.C. 548. Transfers of an interest of the debtor made or incurred within two years of the filing of the petition may be avoided as fraudulent transfers if less than reasonably equivalent value was received in exchange and the debtor was insolvent at the time of the transfer or became insolvent as a result. 11 U.S.C. 548(a)(1)(B). The value recovered through such avoidance actions under 11 U.S.C. § 550 is then added to the bankruptcy estate for the benefit of unsecured creditors.

Here, the parties agree that the Debtor Philip Weigl transferred his interest in Reba Drive absent consideration to his brother M. Scott Weigl within the two years of filing this chapter 13 case. (Debtor's Br., Nov. 24, 2010, ECF No. 50 at 8.) The Debtors concede that Philip Weigl was insolvent at the time of the transfer. They dispute, however, that Philip's interest had any monetary value.

The crux of the parties' disagreement over value is whether Philip's interest in Reba Drive was merely that of a trustee or, instead, that of a joint tenant. If Philip was a joint tenant, as the Trustee contends, then his interest had monetary value. His subsequent transfer to M. Scott Weigl would give rise to a fraudulent transfer, the value of which would have to be

5

AO 72A

(Rev. 8/82)

accounted for in his chapter 13 plan in order to satisfy the "best interests of creditors test." The Debtors' plan, which does not account for such value, would consequently fail that test and not meet the requirements for confirmation.

Because the nature of Philip Weigl's interest in Reba Drive is the cornerstone issue, Georgia law controls the resolution of this matter. As described below, the Debtors did not prove that, under Georgia's law of implied trust, Philip Weigl held bare legal title to Reba Drive. Thus, Debtors also failed to meet their burden of proving that their plan satisfied the "best interests of creditors" requirement.

## RESULTING TRUSTS UNDER GEORGIA LAW[3]

In Georgia, the law of resulting trusts has been codified. Therefore, the Debtors must prove that under the terms of the resulting trust statute, the circumstances of Elsie Weigl's conveyance gave rise to such a trust. The statute provides as follows:

> A resulting trust is a trust implicated for the benefit of the settlor or the settlor's successors in interest when it is determined that the settlor did not intend that the holder of the legal title to the trust property also should have the beneficial interest in the property under any of the following circumstances:

---

[3] In support of their argument that a resulting trust must be implied under Georgia law in this case, Debtors rely heavily upon a case decided under Florida law. See In re Todd, 391 B.R. 504 (Bankr. S.D. Fla. 2008)(applying Florida law to imply a resulting trust).

> (1) A trust is created but fails, in whole or in part, for any reason;
> (2) A trust is fully performed without exhausting all the trust property; or
> (3) A purchase money resulting trust as defined in subsection (a) of Code Section 53-12-131 is established.

Ga. Code Ann. § 53-12-130.

The Debtors argue that, in this case, a trust was indeed created but failed due to the statute of frauds and therefore the circumstances set forth in subsection (1) are met. Yet, as a general principle, a trust cannot be implied based solely upon an express oral agreement setting up an invalid express trust. Jones v. Jones, 196 Ga. 492, 496 (1943). The Debtors, however, cite two cases for the proposition that parol evidence of an oral agreement can help establish an implied trust, but neither is directly applicable on these facts.

In each case, the Georgia Supreme Court concluded that the law would imply a trust from the nature of the transaction and the conduct of the parties. See Varellas v. Varellas, 218 Ga. 125 (1962); Hancock v. Hancock, 205 Ga. 684 (1949).

In the Varellas case, a partner bought property with partnership money but placed legal title in the name of only one partner. 218 Ga. at 125. Under such facts, a trust is implied for the other partners who are, by statute, equitable owners and tenants in common of the property. See id.

7

The Hancock case involved a transfer of real property from father to son for the purpose of the son obtaining a loan for the father. See 205 Ga. at 684-86. After the loan was obtained the father demanded the property be reconveyed but the son refused. See id. The father later died and the administrator of his estate brought suit to impose a constructive trust on the real estate. See id. at 686-89. The Hancock court found a basis for both a resulting and constructive trust on these facts.

Here, I consider only the Hancock court's analysis of the resulting trust because the Debtors have limited their argument to that issue. Importantly, the court found a basis for a resulting trust not in the oral agreement between the father and the son under which the son was to merely hold legal title temporarily, but rather in the nature of the transaction—namely a transfer of legal title, absent consideration, to another for the sole purpose of obtaining credit, followed by a reconveyance. The precedent relied upon by the Hancock court to support its implication of a resulting trust on real property rested on very similar facts.

The nature of Elsie Weigl's transaction and the conduct of the parties are not such that the law would imply a resulting trust in her favor. Unlike the partners in Varellas, there is no statute that declares Elsie Weigl an equitable owner or tenant in common of the real property she transferred. In contrast to the

8

father in Hancock, Elsie Weigl did not transfer the property for the limited purpose of obtaining credit for herself, but rather for the eventual purpose of passing title to her sons outside of probate. In fact, this case most closely mirrors Jones where the court expressly rejected a plaintiff's attempt to engraft an express trust on a deed by parol in the absence of any other evidence of trust formation. See 196 Ga. at 495-96. In Jones, the plaintiff alleged an oral contract similar to that alleged by the Weigls, whereby upon conveyance someone would hold legal title to real property for the benefit of another but have no equitable interest in the realty. See 196 Ga. at 495-96. The court explained that, were this contract placed in writing, an express trust would undoubtedly lie but refused to imply a trust in the absence of such a writing. See id.

Accordingly, I refuse to imply a trust in favor of Elsie Weigl based solely upon parol evidence of an oral agreement in the absence of circumstances in which the law would imply a trust based upon the nature of the transaction and conduct of the parties.

The parties do not contend that a resulting trust arises under Ga. Code Ann. § 53-12-130(2). Likewise, they cannot suggest that a purchase money resulting trust arises under Ga. Code Ann. § 53-12-130(3) because they admit the transfer from Elsie Weigl to Philip and M. Scott Weigl was made absent consideration, a

9

necessary element of such trusts as defined under Ga. Code Ann. § 53-12-131.

## IMPLIED TRUSTS UNDER GA. CODE ANN. § 44-5-87

In the absence of a resulting trust, the Debtors contend that the property was still held in trust by operation of Ga. Code Ann. § 44-5-87. That statute provides a basis upon which to imply a trust for a donor where a gift is made for a specific purpose, but that purpose cannot be accomplished. Here, the Debtors state that the specific purpose of Elsie Weigl's gift to her sons was:

> for them to hold the property legally in their names during her declining years, for Mrs. Weigl to live in the house for the rest of her life and, to the extent she did not need the property in the future, for her sons to inherit the property at her death.

(Debtor's Brief, Nov. 24, 2010, ECF No. 50 at 8.) Distilled from the vagaries of that statement, the specific purpose of Elsie Weigl's gift was to transfer Reba Drive to her sons outside of probate but continue residing in the house. Where that purpose was accomplished, no trust may be implied.

## CONCLUSION

Having failed to prove that Philip Weigl's interest was a bare legal interest absent monetary value, the Debtors also failed to demonstrate that the "best interests of creditors" test

10

AO 72A
(Rev. 8/82)

is satisfied by their proposed plan, which does not account for the recoverable value of Philip's transfer of that interest. Consequently, the objection of the Trustee is **ORDERED SUSTAINED** and confirmation is **ORDERED DENIED**, as the Debtors have failed to prove by a preponderance of the evidence that all requirements for confirmation have been met.

The Debtors have 28 days from the date of this order to file an amended plan to meet the Chapter 13 Trustee's objections. Absent such amendment, this case will be converted to a case under chapter 7 without further notice or hearing.

JOHN S. DALIS
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this _18_ day of January, 2011.

11